FILED

2024 Dec-17 PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| BARRY L. VARNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-68-GMB |
| | ) | |
| MARTIN O'MALLEY, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION**</u>

On April 9, 2021, Plaintiff Barry L. Varnon filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of December 24, 2020. Varnon's application was denied at the initial administrative level and upon reconsideration. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on January 23, 2023, and denied Varnon's claims on March 9, 2023. Varnon requested a review of the ALJ's decision by the Appeals Council, which declined review on November 17, 2023. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 17, 2023.

Varnon's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil

Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 10.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI").  However, separate parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Varnon bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Varnon was 51 years old on the date of his alleged onset of disability. R. 128, 407.  His primary complaints are pain from arthritis in his spine, tingling, burning, and numbness in his hands, and pain in his neck and lower back. R. 169–71, 175.  In his disability report, Varnon alleged the following medical conditions: carpal tunnel, shoulder blade problems, spine problems, and lower back problems. R. 386.  When asked at the hearing about his medically determinable severe impairments, Varnon's counsel listed disc protrusion with thoracic spondylosis, degenerative joint disease, severe neck pain due to bilateral femoral narrowing at C4-5, fibromyalgia, bilateral carpal tunnel syndrome, decreased testosterone levels, and side effects of medication. R. 164.  He has a high school education and two years of community college. R. 169, 387.  His past relevant employment includes working as a draftsman,

a construction foreman, and a general contractor. R. 168, 170, 387.

At the hearing, Varnon testified about his limitations and daily activities. He said that he cannot stand or walk for long periods of time, so he has to stop and take a break approximately every ten minutes. R. 171. He can only stand in one spot for ten minutes without having to lean on something or sit down, and he cannot sit for longer than 30 minutes. R. 171. Varnon testified that he can lift a two-liter bottle off the floor, but only if he is leaning against a wall because his balance is poor. R. 171–72. Varnon's pain is most severe below his shoulders in his neck and in his "very lower back," but he states that "the whole thing hurts." R. 172. He rates his pain as a nine out of ten. R. 172.

Varnon testified that he has trouble with daily activities. He does not sleep well at night and wakes up with pain in his back. R. 173. He takes a two-hour nap "about every day," in part because his medications make him drowsy. R. 173–74. His medication also makes him forgetful. R. 174. He has difficulty dressing and bathing himself. R. 174. He is not able to sit through a two-hour movie. R. 174–75. He spends his days watching television, walking around, and going outside and smoking. R. 176. His pain makes him irritable and interferes with his relationships with other people. R. 173.

The ALJ issued his decision on March 9, 2023. R. 130, 407. Under step one of the five-step evaluation process, the ALJ found that Varnon had not engaged in

substantial gainful activity since December 24, 2020, the alleged onset date. R. 123. The ALJ concluded that Varnon suffers from the severe impairments of disc protrusion at L5/S1 with stenosis, cervical degenerative disc disease, fibromyalgia, and low testosterone.[2] R. 123.  The ALJ noted that these medically determinable impairments cause significant limitations in his ability to perform basic work activities. R. 124.  And the ALJ concluded at step three of the analysis that none of Varnon's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 124–25.

Before proceeding to the fourth step, the ALJ determined that Varnon had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). R. 125.  More specifically, the ALJ found that Varnon had the following limitations with respect to light work:

> He can occasionally climb ramps and stairs.  He can frequently stoop, kneel, crouch, and crawl.  He should avoid ladders, ropes, scaffolds, unprotected heights, and hazardous machinery.  He can reach overhead occasionally.  He can reach in all other planes on a frequent basis.  He can have occasional exposure to vibration.

R. 125.  At the fourth step, the ALJ considered Varnon's age, education, work experience, and RFC in determining that there are jobs that exist in significant

---

[2] The ALJ found Varnon's impairment of carpal tunnel syndrome to be non-severe. R. 124.  But even if the ALJ considered it a severe impairment and reduced Varnon's RFC use of the hands bilaterally for handling, fingering, and feeling to only occasionally, the ALJ concluded there still would be jobs that exist in the national economy that Vernon can perform. R. 129.  Varnon does not challenge these findings. *See* Doc. 11.

numbers in the national economy that he can perform, including work as a sales attendant, routing clerk, and order caller. R. 128–29.  Therefore, the ALJ concluded that Varnon was not under a disability as defined by the Social Security Act from December 24, 2020, through the date of decision. R. 130.  Based on these findings, the ALJ denied Varnon's application. R. 130.

After this denial, Varnon appealed and submitted additional evidence to the Appeals Council, including medical assessments.  Relevant here, Varnon submitted a physical capacities form along with medical records from Dr. Jonathan Fuller dated March 20 through June 12, 2023. R. 77–88.  Dr. Fuller completed the physical capacities form on April 5, 2023. R. 77.  Most of the form required Dr. Fuller to answer a series of questions by checking or circling pre-printed answers or filling in blanks. R. 77.  For instance, when asked how long Varnon could sit upright in a standard chair, Dr. Fuller circled "< 30 minutes." R. 77.  Likewise, he circled "< 30 minutes" when asked how long Varnon could stand at one time. R. 77.  He also responded that he would expect Varnon to be "lying down, sleeping, or sitting with legs propped at waist level or above, due to his medical condition" for four hours during an eight-hour workday. R. 77.  Dr. Fuller estimated Varnon would be off task for 80% of an eight-hour workday and would miss 15 days of work in any 30-day period. R. 77.

When asked if these limitations existed back to December 24, 2020, Dr. Fuller

wrote, "unknown, did not see patient until 2023." R. 77.  He offered the opinion that the condition would last more than 12 months.  And when asked what conditions cause the limitations, Dr. Fuller wrote:

> Patient has been treated for several years by his pain management specialist, who likely has more detailed documentation of patient history.  No documentation available that demonstrates a cause of patient's symptoms.  However, per provided history, patient suffers from degenerative disc disease of lumbar spine, no recent MRI results that demonstrate this condition.

R. 77.  Finally, Dr. Fuller listed the following side effects of Varnon's medication: forgetfulness, fatigue, and drowsiness. R. 77.

Varnon also submitted an "independent examination report" from consulting examiner Dr. Jane Teschner dated September 19, 2024. R. 14–19.  Varnon complained to Dr. Teschner that he suffered from lumbar radiculopathy and neck pain, and he told her "he is stiff and cannot move like he used to." R. 15.  Upon examination by Dr. Teschner, Varnon appeared stiff and in pain, and he changed positions frequently. R. 16.  He had a positive straight leg raise test, reduced range of motion of the cervical spine and lumbar spine, difficulty with tandem walking, an inability to squat, an inability to touch his toes, reduced deep tendon reflexes, lower extremity strength of 1/5 on the left and 2/5 on the right, an inability to walk on his tip toes, and an antalgic gait. R. 16.  Noting Varnon's pain, stiffness, and gait, Dr. Teschner opined that Varnon "certainly cannot do either a labor-intensive job or a desk job." R. 16.  Additionally, Dr. Teschner noted that Varnon's cervical

radiculopathy and lumbar myopathy "issues appear much worse than the MRIs" and "will become progressively worse over time." R. 16.

Separately, Dr. Teschner completed a physical capacities form similar to the one Dr. Fuller completed. R. 18. She responded that Varnon could frequently lift up to five pounds, occasionally lift six to ten pounds, and never lift anything more than ten pounds. R. 18. When asked about manipulative limitations in his left and right hands, Dr. Teschner checked the response that Varnon can occasionally perform reaching but never handling, fingering, or feeling. R. 18.

When asked how long Varnon could sit upright in a standard chair, Dr. Teschner circled "< 15 minutes." R. 18. Likewise, she circled "< 15 minutes" when asked how long Varnon could stand at one time, and also responded that he could stand for only 30 minutes in an eight-hour day. R. 18. She would expect Varnon to be "lying down, sleeping, or sitting with legs propped at waist level or above, due to his medical condition" for two hours during every eight-hour workday. R. 18. Dr. Teschner estimated Varnon would be off task for 80% of an eight-hour workday and expected he would miss 15 days of work in a 30-day period. R. 18. She responded "yes" when asked if these limitations existed back to December 24, 2020. R. 18. For the conditions causing the limitations, Dr. Teschner wrote "lumbar radiculopathy C. radiculopathy CTS" and explained that Varnon's medications caused drowsiness and dizziness. R. 18.

The Appeals Council found that neither Dr. Fuller nor Dr. Teschner's opinions related to the period at issue. R. 2.  It thus concluded that the opinions do "not affect the decision about whether you were disabled on or before March 9, 2023." R. 2.

## IV.  DISCUSSION

Varnon makes six[3] arguments in favor of remand: (1) the ALJ failed to consider the psychological sources of his pain; (2) the ALJ violated the pain standard by ignoring his psychologically caused pain; (3) the ALJ failed to include limitations related to low testosterone in the RFC; (4) the ALJ failed to consider the side effects of his medications; (5) the ALJ failed to consider his work history and evaluations in developing the RFC; and (6) the Appeals Council erred when it failed to grant review. Doc. 11 at 13–26.  The court addresses each argument below.

## A.    Psychological Sources of Pain and Application of the Pain Standard

Varnon argues that the ALJ impermissibly disregarded the psychological sources of his pain and violated the pain standard in doing so. Doc. 11 at 14–17.  The court disagrees.

The claimant has the burden of proving that he or she is disabled. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The ALJ, on the other hand, has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  This duty generally requires the ALJ to assist in gathering medical

---

[3] Because the first two arguments are related, the court discusses them in combination.

evidence and to order a consultative examination when necessary to an informed decision. 20 C.F.R. §§ 404.1512(b), 416.912(b).  But this duty does not require the ALJ to "scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant." *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006).  Thus, the Eleventh Circuit has routinely concluded that the ALJ has no duty to consider an impairment that the claimant did not allege to be disabling during the administrative process. *Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010); *East*, 197 F. App'x at 902; *Street v. Barnhart*, 133 F. App'x 621, 627–28 (11th Cir. 2005).

Varnon did not claim any psychological condition, related to pain or otherwise, during his proceedings before the ALJ.[4]  None of the documents Varnon submitted to the SSA include any complaints of a psychological condition as the source of his pain. R. 386, 409–10, 416, 421–22.  At the hearing, Varnon discussed his subjective complaints of pain but did not mention any psychological origins for

---

[4] Varnon is correct that his records from Alabama Anesthesiology and Pain Consultants reference "other pain disorders related to psychological factors."  But Varnon's argument that he has been diagnosed with "somatic symptom disorder" is an exaggeration of the record.  Notably, Varnon does not cite to any medical record where a physician diagnosed him with somatic symptom disorder.  Instead, the doctors noted repeatedly that there is no physiological reason for his pain. *See, e.g.*, R. 583.  The notation of "other pain disorders related to psychological factors" is not a diagnosis; it appears in the ICD Codes section from each office visit. R. 698, 721, 734, 745, 762, 776.  Medical providers use the ICD Codes when submitting claims to Medicare. *See* https://www.cms.gov/medicare/coordination-benefits-recovery/overview/icd-code-lists (last visited Dec. 16, 2024).

that pain. R. 163–84.  Even his attorney, when asked to list Varnon's alleged

medically determinable severe impairments at the hearing, identified only physical

conditions. R. 164 (listing disc protrusion with thoracic spondylosis, degenerative

joint disease, severe neck pain due to bilateral femoral narrowing at C4–5,

fibromyalgia, bilateral carpal tunnel syndrome, decreased testosterone levels, and

side effects of medication).

Because Varnon did not allege a disabling psychological condition, the ALJ

had no duty to consider it, including by conducting an analysis of mental

impairments according to the psychiatric review technique at steps two and three.

*See Robinson*, 365 F. App'x at 995 (holding ALJ had no duty to consider claimant's

chronic fatigue syndrome ("CFS") diagnosis where claimant was represented at the

hearing and did not allege she was disabled due to CFS when she filed her claim or

at her hearing).  With this conclusion, it follows that the ALJ was not required to

evaluate this condition under the pain standard.  Accordingly, the ALJ did not err in

failing to consider Varnon's psychological condition or to evaluate it under the pain

standard.

**B.    Limitations from Low Testosterone**

Varnon next argues that the ALJ erred by failing to include additional

limitations in his RFC based on the determination of low testosterone as a severe

impairment. Doc. 11 at 17–19.  Specifically, Varnon argues that the RFC should

have included limitations related to fatigue caused by low testosterone. Doc. 11 at 18–19.  The court disagrees.

An ALJ need only ground his RFC determination on the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after evaluating all of the material information presented to him. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  As long as the court can ascertain from the ALJ's decision that he assessed all of the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1545, 416.945.

While Varnon argues that the ALJ failed to account for the effect of his low testosterone and resulting fatigue on his ability to work, the court disagrees.  The ALJ included low testosterone as a severe impairment and noted Varnon's subjective complaints of fatigue. R. 125.  Beyond that, however, there is no evidence in the record identifying any limitations caused by these conditions.  Notably, Varnon does not identify any evidence of how his fatigue impacted his ability to work or limited him in any way not already incorporated into his RFC.  The only evidence Varnon identifies in this respect is his own subjective complaints at the hearing and reports to his urologist. Doc. 11 at 7.  And while the ALJ specifically noted Varnon's testimony that he "was fatigued all the time" (R. 125), he also found that Varnon's subjective complaint were not entirely consistent with the medical evidence and

other evidence of record. R. 127.

The existence of a condition or diagnosis of an impairment does not necessarily establish work-related limitations. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Varnon has not produced any medical evidence establishing that the severe impairment of low testosterone caused any additional limitations not included in the RFC or showing the additional limitations that should have been included. Ultimately, it is Varnon's burden to show that the severe impairment caused additional limitations on his ability to work. *Pupo v. Comm'r, Soc. Sec.*, 17 F.4th 1054, 1060 (11th Cir. 2021). He has failed to do so. Accordingly, substantial evidence supports the ALJ's RFC determination.

## C.    Medication Side Effects

Varnon contends that the ALJ erred by failing to consider the side effects of his medication. Doc. 11 at 19–20. In determining whether a claimant's impairments limit his ability to work, the ALJ considers the claimant's subjective symptoms, which include the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). "[U]nder certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications." *Walker v. Comm'r of Soc. Sec*., 404 F. App'x 362, 366 (11th Cir. 2010) (citations omitted). However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving he is disabled. *Ellison*

*v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Accordingly, the claimant must introduce evidence supporting the claim that his symptoms—including any medication side effects—make him unable to work. *Walker*, 404 F. App'x at 366.

The ALJ specifically noted Varnon's testimony that his "medication made him drowsy, caused memory issues, and made his mind slow down." R. 125.  While the ALJ did not explicitly analyze these alleged side effects, he did find that Varnon's subjective complaints were not supported by the medical evidence.[5] R. 125–27.  Varnon does not cite to any evidence demonstrating that he complained of disabling side effects to his doctors. *See* Doc. 11 at 19–20.  And the record consistently shows that Varnon either did not report or denied side effects from his medications to his doctors. *See, e.g.*, R. 675, 688, 714, 719, 732, 743, 760, 774, 788, 792, 796–97, 801, 810, 822, 824, 851, 1215, 1218, 1220, 1229, 1230, 1232, 1353, 1367, 1371, 1373, 1384, 1388, 1392, 1406, 1415, 1440, 1447, 1464.  The lack of evidence in the record supporting Varnon's subjective complaints about medication side effects supports the ALJ's findings about Varnon's credibility. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) ("[W]hile [the claimant] testified to medication side effects and reported medication side effects once, he also repeatedly declined to report any medication side effects.  Therefore, the ALJ did not fail to consider [the claimant's] medication side effects

---

[5] Varnon does not contest this credibility assessment. *See* Doc. 11.

. . . ."); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (stating that the ALJ's determination relating to the claimant's side effects was proper where the claimant did not complain about side effects and the record did not disclose concerns about side effects to the doctors examining the claimant).

Moreover, the ALJ addressed medication side effects at the hearing and noted them in his decision. And he stated that he considered all of Varnon's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other portions of the record. R. 125 (citing 20 C.F.R. § 404.1529 and SSR 16-3p). These findings are sufficient to show that the ALJ properly evaluated the Varnon's medication side effects. *See Robinson*, 649 F. App'x at 802 (finding that, even though the ALJ did not mention the claimant's alleged medication side effects in particular in her decision, the ALJ satisfied her duty to consider those side effects, in part, by stating that she considered all the claimant's symptoms based on the requirements of the applicable Regulation and Social Security Ruling).

## D.    Third-Party Statements

Varnon contends that the ALJ erred when he failed to consider reports from recent employers that he could not complete tasks in a timely manner, had a problem with absenteeism due to doctors' appointments, required too many breaks, and dropped and broke tools because he could not hold them. Doc. 11 at 20–22. The

court disagrees.

At the outset, the court rejects Varnon's characterization of these reports as "work attempts" or "work evaluations" under Social Security Ruling ("SSR") 98-6p. Doc. 11 at 21.  Instead, the court agrees with the Commissioner that these statements are more appropriately viewed as lay evidence under SSR 96-8p.  The Program Operations Manual System ("POMS")[6] defines a "work evaluation" as "a comprehensive process that systematically uses work, real or simulated, as a focal point for assessment.  The full program includes a detailed interview.  It incorporates medical, psychological, social and vocational data to determine an individual's current level of functioning." POMS DI 22515.035(A).  Work evaluations must be conducted by a qualified source recognized by a state government agency, federal government agency, or nationally recognized accrediting organization. POMS DI 22515.035(C)(1).  The statements from Varnon's former employers do not qualify as work evaluations.

An ALJ may receive evidence from non-medical sources, such as job coaches and employers, into the administrative record. 20 C.F.R. § 404.1513(a)(4).  Evidence from these non-medical sources may show the severity of a claimant's symptoms and how it affects her ability to work. 20 C.F.R. § 404.1529(a), (c).   And the

---

[6] The POMS is the Social Security Administration's primary manual of policies and procedures. *See* https://www.ssa.gov/OP_Home/ (last visited Dec. 16, 2024).

testimony of nonmedical sources "is evidence of [the claimant's] subjective feelings of pain." *Osborn v. Comm'r of Soc. Sec.,* 194 F. App'x 654, 666 (11th Cir. 2006) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)).  But the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using" the persuasiveness factors. 20 C.F.R. § 404.1520c(d).

The ALJ did not explicitly address the statements from his former employers. This failure does not require remand because the ALJ clearly rejected Varnon's similar statements about his ability to work.  Specifically, the ALJ found that Varnon's subjective complaints were unsupported by the medical evidence (R. 125–27), including his unremarkable physical and mental evaluations, and noted that Varnon was alert and oriented, not in any acute distress, and had normal strength and gait; was neurologically intact; had no manipulative deficits; had only mildly abnormal imaging; and had the same treatment since the time of his employment. *See, e.g.*, R. 588–606, 607–21, 622–45, 646–65, 674–81, 682–781, 820–44, 1002–06, 1007–236, 1367–72, 140–09, 1464–69.  And to the extent Varnon argues that the statements establish that his condition deteriorated to the extent he could not work anymore (Doc. 11 at 22), the ALJ concluded, with ample support in the medical evidence, that his condition did not show such advancement. *See Osborn*, 194 F. App'x at 666 (holding that even though ALJ did not mention the claimant's wife's written statement, the ALJ implicitly rejected the third-party statement when making

a specific and explicit determination about the claimant's testimony).

Instead, Varnon's argument is akin to an invitation to reweigh the evidence. The court declines to do so.  It is the court's job to review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)).   "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)); *see Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court").

## E.    New Evidence Submitted to Appeals Council

Varnon's final argument is that the ALJ erred when it did not consider the medical opinions from Dr. Fuller and Dr. Teschner because he concluded that they were not chronologically relevant. Doc. 11 at 23–26.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council.

*Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to [the court's] de novo review,'" and "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (quoting *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). New noncumulative evidence is evidence that was not previously presented to the ALJ and "found to be wanting." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Id*.

"Evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ] hearing decision.'" *McGriff v. Comm'r, Soc. Sec. Admin*., 654 F. App'x 469, 472 (11th Cir. 2016) (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)); *see also Washington*, 806 F.3d at 1323 (holding that a physician's opinion after the ALJ's decision could be chronologically relevant even though the physician "never explicitly stated that his opinions related back to the date of the ALJ's decision"). Even records that postdate the ALJ's decision may be chronologically relevant when

they assess conditions existing before the decision, the physician evaluated medical records from before the ALJ's decision, and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

The court agrees with the Appeals Council that Dr. Fuller's and Dr. Teschner's opinions are not chronologically relevant. Although Varnon first saw Dr. Fuller only two weeks after the ALJ's decision, he did not state that his opinion related back to the relevant time frame and admitted that he did not see Varnon until 2023. R. 77. What is more, there is no indication that Dr. Fuller relied on any medical documentation from the period at issue. R. 77. Instead, there is no evidence he relied on anything other than Varnon's subjective complaints about limitations that existed before his treatment began in late March 2023. R. 77. For these reasons, Dr. Fuller's opinions do not relate to the period on or before the date of the ALJ's hearing decision. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (agreeing doctor's opinion that indicated limitations were present during the relevant period was not chronologically relevant when the doctor did not start treating claimant until after the relevant period and "nothing in the form or any other documents indicated" the doctor "evaluated . . . past medical records when forming that opinion").

Dr. Teschner's opinions are not chronologically relevant either. First, they do not relate to the period before the ALJ's decision. Specifically, Varnon saw Dr.

Teschner for the first (and only) time approximately six months after the ALJ's decision. Although she checked "yes" when asked whether the limitations existed back to December 2020, there is nothing within her notes to support this statement, especially considering that almost three years had passed by the time Dr. Teschner saw Varnon. *See* R. 14–17. Additionally, Dr. Teschner's opinion reflects a deterioration of Varnon's condition. In contrast to her findings, the medical records before the ALJ reveal generally normal physical examinations, including normal strength and gait, normal range of motion, no manipulative deficits, and only mildly abnormal imaging. *See, e.g.*, R. 582–87, 676–80, 1008–09, 1022, 1028, 1367. Also, Dr. Teschner's opinion is much more limited than even Dr. Fuller's opinion and incorporates Varnon's complaints of new issues. *Compare* R. 14–15, *with* R. 78–88. For example, medical notes from late May 2023 reference new complaints of knee pain, and Vernon reported falling and injuring his shoulder in June. R. 136–39, 142. Dr. Teschner's June 2023 exam, however, did not reveal any stiffness or reduced range of motion. R. 138–39. Treatment records dated after the ALJ's decision that reflect deterioration and medical opinions dated after the ALJ's decision based on that condition are not chronologically relevant. *See Stone v. Comm'r Soc. Sec. Admin.*, 658 F. App'x 551, 555 (11th Cir. 2016).

For these reasons, the Appeals Council did not err in concluding that the new medical records from Drs. Fuller and Teschner were not chronically relevant.

"Because the new evidence was not chronically relevant, the Appeals Council was not required to consider it." *Hargress*, 883 F.3d at 1310.

## V. CONCLUSION

The court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on December 17, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE